UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CENTRAL DISTRICT

Civil Action No.

| | |
|---|---|
| STUTMAN CONTRACTING, INC., | ) |
| Plaintiff | ) |
| v. | ) |
| HUSSEY SEATING COMPANY, | ) |
| Defendant | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Introduction**

This case concerns the question who should bear the loss in a commercial transaction when an unknown third-party bad actor infiltrates the parties' computer networks and gives false and fraudulent instructions that result in the diversion of a wire transfer payment. In this case, the Defendant failed to act in a commercially reasonable manner when it was or should have been on notice that payments it was to receive were being fraudulently diverted. As between the parties hereto, the Defendant should bear the loss.

**Parties**

1. Plaintiff Stutman Contracting, Inc. is a Massachusetts Corporation with a principal place of business listed with the Secretary of the Commonwealth at 18 Sutton Ave., Oxford, MA 01540.

2.      Defendant Hussey Seating Company is a Maine corporation with a principal place of business 38 Dyer Street Ext., North Berwick, ME 03906.

## Jurisdiction and Venue

3.      The jurisdiction of this Court is appropriate in this matter because the amount in controversy exceeds $75,000 exclusive of interest and costs and all parties (including corporate members) are citizens of different states as required by 28 U.S.C. § 1332.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that the claims and judgment at issue arose within this judicial district.

## Facts Common to All Counts

5.      On or about May 8, 2023, the Parties entered into a contract whereby Hussey would supply seating to Stutman for a project that Stutman had undertaken at the DCU Center in Worcester, MA. According to that contract, Hussey was required to make partial payment applications to Stutman and in return, Stutman would pay undisputed applications. A true and accurate copy of the Contract is attached at Exhibit A, hereto.

6.      After May 8, 2023, Hussey began to supply the contracted for seating to Stutman and on June 28, 2023, Brian Harrington, Treasury & Credit Manager for Hussey ("Harrington") emailed invoice #9907097 to Stutman for services performed through June of 2023 together with a payment application, in the amount of $178,634.20. True and accurate copies of the Invoice and Payment Application are attached at Exhibit B, hereto.

7. The June payment application was emailed by Mr. Harrington from the email address of bharrington@husseyseating.com.

8. Copied on the June payment application email was Jason Fitton ("Fitton"), who, on information and belief was Hussey's Project Manager for this job. Fitton's email address however, had been changed or "spoofed" by a third-party bad actor (the "Hacker") so that the email address listed was jfitton@husseyseatnig.com and not jfitton@husseyseating.com. A true and accurate copy of the email, showing the email addresses, is attached at Exhibit C, hereto.

9. On information and belief, Hussey was subject to a cyber hack which compromised its email system and exposed the information of Hussey's customers including Stutman.

10. On information and belief, the Hacker sent a so-called phishing email to a Hussey employee who opened the email and clicked on a link within the email which allowed the Hacker to access Hussey's email system and intercept the email communications between Hussey and Stutman.

11. On July 25, 2023, Jillian Baker, of Stutman ("Baker"), received an email purporting to be from Harrington, but, unknown to Baker, which was actually sent by the Hacker with a spoofed email address of bharrington@husseyseatnig.com and for jfitton@husseyseatnig.com. That email claimed that Hussey was experiencing banking difficulties and indicated that payments by Stutman should be made by ACH/Wire payments. See Exhibit C.

3

12. On July 25, 2023, Baker "replied" to Harrington's email confirming receipt of the first application, and that confirmation was sent to the spoofed email addresses. A true and accurate copy of the email is attached at Exhibit D, hereto.

13. On information and belief, the Hacker also spoofed Stutman emails with similar alterations to the Stutman email addresses.

14. On July 26, 2023, Harrington emailed Baker with certified payroll information for the period included in the first payment application, which information included employee names, and details of hours worked and wages paid.

15. Also on July 26, 2023, Harrington emailed Baker with the Second payment application, in the amount of $302,968.77, that payment application being sent from Harrington's correct email address. A true and accurate copy of the July 26, 2023 email and payment application are attached at Exhibit E, hereto.

16. On July 27, 2023, the Hacker provided information for a Citizens Bank account that it claimed belonged to Hussey, and that it directed Baker to wire the payments to. A true and accurate copy of that email with redacted Citizens Bank information is attached at Exhibit F, hereto.

17. Thereafter, several email exchanges were made between the Hacker, posing as Harrington, and Baker inquiring about the status of the first payment application.

18. On August 8, 2023, Baker confirmed to Harrington that the first wire transfer were made that day to Hussey, in two separate transfers but totaling $178,634.20, the amount of the first payment application. That email was sent to Harrington's spoofed email address. A true and accurate copy of the August 8, 2023 email is attached at Exhibit G, hereto.

19. In response, on August 8, 2023, the Hacker, from Harrington's spoofed email address, responded to Ms. Baker to confirm the understanding that Stutman had sent the payment. Here, the Hacker made an error, and cc'd Hussey employee Fitton at his correct email address. A true and accurate copy of the August 8, 2023 email, displaying Fitton's email address is attached at Exhibit H, hereto.

20. At least on August 8, 2023, Hussey, through Fitton, was on notice that the first payment had been made by Stutman.

21. On August 23, 2023, Baker emailed Harrington at the false email address requesting payroll records for the period covering the second payment application.

22. On August 28, 2023, the Hacker, from Harrington's spoofed email address, requested that the second payment be sent and indicated that the payroll records would be sent "as soon as it's ready."

23. On or about August 29, 2023, Baker sent an email to the false email address for Harrington that the second payment application would be completed once Stutman received certified payroll reports for July.

24. On August 31, 2023, the Hacker, from Harrington's spoofed email address, forwarded the requested payroll for the second payment application to Baker.

25. On information and belief, the ability of the Hacker to obtain confidential payroll information from Hussey indicated that the Hacker had full access to Hussey's computer network.

26. On September 5, 2023, in response to Baker's requests, the Hacker, from Harrington's spoofed email address, forwarded payment application three, in the amount of $250,258.03, to Baker. A true and accurate copy of the September 5, 2023 email, with attached payment application three, is attached at Exhibit I, hereto.

27. Also, in response to Baker's request, on September 27, 2023, the Hacker, from Harrington's spoofed email address, provided Baker with Hussey payroll records corresponding to the period covered by payment application three.

28. On information and belief, as of September 27, 2023, the Hacker continued to have full access to Hussey's computer network.

29. On October 11, 2023, more than three months after Harrington sent Hussey's first payment application, and at no time prior to that, Harrington picked up the telephone and called Baker to inquire about not receiving the first three payments, leaving a voicemail as it was after hours.

30. On October 12, 2023, Baker returned Harrington's call to advise him that Stutman had wired all payments to Hussey. It was determined at that instant that a wire transfer fraud had occurred.

31. On information and belief, between August 8, 2023 and October 12, 2023, Fitton, and Harrington communicated about Hussey's nonreceipt of the Stutman payments. Yet, Fitton failed to take note of Stutman's August 8, 2023 notification of payment, or to otherwise advise Hussey of an inconsistency in the claimed payment versus Hussey's own records.

## COUNT I
## (DECLARATORY JUDGMENT)

32. Plaintiff realleges and incorporates the foregoing paragraphs herein.

33. Defendant's lack of diligence in tracking the actual non-receipt of payments by Stutman, contradicting the August 8, 2023 email from Stutman, which lack of diligence lasted three and a half months renders Hussey the party to the transaction who should bear the loss, in accordance with Massachusetts law and policy.

34. The dispute is a justiciable matter that is not speculative, and a resolution by this Court will determine the respective rights and interests of the parties were an unknown hacker infiltrated Hussey's computer network, and caused Stutman's full payment to be diverted to that hacker.

35. Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for determining who should bear the loss from this transaction.

36. Accordingly, Plaintiff seeks a declaratory judgment that the Defendant, of the two parties, being the only one who had or should have had actual knowledge of the fraudulent diversion of funds, should bear the loss.

## COUNT II
## (NEGLIGENCE)

37. Plaintiff realleges and incorporates the foregoing paragraphs herein.

38.	It is unheard of in the construction industry for a subcontractor to not inquire about payments overdue for more than ninety days, and is a breach of ordinary care to not so inquire.

39.	Hussey had a duty to contact Stutman and receive a response explaining why such payment had not been received.

40.	It is a breach of ordinary care for Fitton to have ignored an email stating that payment had been sent, when he knew, or should have known, that Hussey never received that payment.

41.	Had Fitton advised Harrington of the email stating that payment had been received, then Harrington would have contacted Stutman to advise Stutman that no payment had been received.

42.	Had Hussey used ordinary care, Stutman's damages would have been limited to the first wire transfer.

43.	By virtue of the forgoing, Hussey proximately caused Stutman damages according to Stutman's proof at trial.

## COUNT III
### (MUTUAL MISTAKE/EQUITABLE REFORMATION)

44.	Plaintiff realleges and incorporates the foregoing paragraphs herein.

45.	Fitton, when alerted of the payment that Hussey never received, was obligated to take action to investigate the inconsistency to prevent further fraudulent communication by the Hacker representing itself to be Hussey's authorized representative.

46.	Fitton's actions and inactions are binding upon Hussey.

8

47. By failing to take action, Fitton, on behalf of Hussey, granted to the Hacker apparent authority to change the payment method under the contract.

48. The Hacker changed the payment method to wire transfer to the Hacker's bank account.

49. Hussey is bound by the change in payment method and the resultant wire transfer of funds to the Hacker's bank account.

## COUNT IV
## (BREACH OF CONTRACT)

50. Plaintiff realleges and incorporates the foregoing paragraphs herein.

51. Hussey has made a claim upon the Plaintiff's performance bond based upon claimed nonpayment, despite the irrefutable truth that Plaintiff has transmitted full payment of the outstanding amount due, by wire.

52. Despite Plaintiff's full payment, Hussey has demanded payment under Plaintiff's performance bond, in breach of the parties' contract, for which Plaintiff has been damaged according to its proof at trial.

## COUNT V
## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

53. Plaintiff realleges and incorporates the foregoing paragraphs herein.

54. Massachusetts courts imply a covenant of good faith and fair dealing with regard to all Massachusetts contracts.

55.     Plaintiff's contract with Hussey implied that Hussey would have sufficient internal controls and personnel training to properly account for payment receipts and to investigate irregularities in the payment process.

56.     Fitton's failure to investigate Stutman's claim of payment, when Hussey had not received that payment, is a failure of commercially reasonable internal controls.

57.     Hussey's failure to call Stutman until three and a half months after the first payment application, when Hussey had not yet received payment for that payment application and two subsequent payment applications is a further failure of commercially reasonable internal controls.

58.     By virtue of the foregoing, Hussey has breached the implied covenant of good faith and fair dealing for which Stutman is entitled to damages according to its proof at trial.

## COUNT VI
## (INDEMINIFICATION)

59.     Plaintiff realleges and incorporates the foregoing paragraphs herein.

60.     By virtue of Paragraph 5 of the Contract, Hussey is obligated to indemnify Plaintiff in accordance with the terms of that provision.

## COUNT VII
## (M.G.L. CHAPTER 93a, SECTIONS 2 AND 11)

61.     Plaintiff realleges and incorporates the foregoing paragraphs herein.

62.     Both Stutman and Hussey are "persons[s]" engaged in "trade or commerce" within the meaning of Chapter 93A.

63. Hussey's conduct, described above, constitutes an unfair and deceptive act or practice declared unlawful by the Legislature of the Commonwealth at M.G.L. Chapter 93A, Section 2 and 11, and were done willfully and recklessly.

64. Hussey's unfair or deceptive acts and practices have caused Stutman to suffer damages according to Stutman's proof at trial.

65. Despite Plaintiff's full payment, Hussey has demanded payment under Plaintiff's performance bond, in breach of the parties' contract, for which Plaintiff has been damaged according to its proof at trial.

WHEREFORE, Plaintiff, Stutman Contract prays that judgment enter in its favor on each of the foregoing Causes of Action,

1. That this Honorable Court enter Declaratory relief, actual damages, statutory, and treble damages, as pled herein;

2. Attorney's fees and costs of suit; and

3. That the Court enter such other and further relief as may be appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

                         Respectfully submitted,
                         Plaintiff,
                         Stutman Contracting, Inc.

                         By its attorneys,


                         /S/ Robert S. White
                         Robert S. White, BBO #552229
                         BourgeoisWhite, LLP
                         One West Boylston Street, Suite 307
                         Worcester, MA 01605
                         Tel.  (508) 753-7038
                         Fax: (508) 756-1613
                         rsw@bw.legal


Dated:  March 18, 2024